IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ADAM RUNS THROUGH, MATTHEW BLACK EAGLE, HARRIS MCCONNELL, and CLINT JACKSON, | CV 20-93-GF-BMM-JTJ |
| Plaintiffs, | ORDER |
| vs. | |
| CHRIS DSCHAAK and CITY OF WOLF POINT, | |
| Defendants. | |

**INTRODUCTION**

Plaintiffs Adam Runs Through, Matthew Black Eagle, Harris McConnell, and Clint Jackson have filed a motion for reasonable attorney's fees and costs (Doc. 18) and ask the Court to determine a reasonable amount of such fees and costs. The Court held a hearing on this matter on February 17, 2022.

**BACKGROUND**

Plaintiffs Matthew Black Eagle, Clint Jackson, Harris McConnell, and Adam Runs Through, who are all enrolled members of the Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation and residents of Wolf Point, Montana, were involved in an alleged altercation with Defendant Chris Dschaak, the mayor of Wolf Point. (Doc. 1 at 4).

A similar incident involving Dschaak also occurred earlier that day. Dschaak's alleged altercation earlier in the day involved four different people. (Doc. 1 at 3). The four people from the other altercation initially were Plaintiffs in this case, but were dismissed on October 12, 2021. (Doc. 23 at 2).

Plaintiffs retained Timothy Bechtold, a Missoula, Montana attorney, to represent them in a suit against Defendants Dschaak and the City of Wolf Point. (*Id.* at 1). Plaintiffs brought two counts of violations of their civil rights pursuant to 42 U.S.C. § 1983, one count of violation of their rights under the Montana Constitution, one count of negligence, and one count of assault and battery against Dschaak and the City of Wolf Point. (*Id.* at 4-9).

Bechtold spent 86.7 hours working on Plaintiffs' case.  (Doc. 19-1 at 4). Bechtold spent 36.7 of those hours traveling between Missoula and Wolf Point. (*Id.* at 6-7). The drive from Missoula to Wolf Point is 484 miles one-way and takes approximately eight hours, not accounting for any stops along the way. Google

Maps, https://www.google.com/maps (last visited March 17, 2022). Bechtold

traveled from Missoula to Wolf Point and back twice, once to meet with Plaintiffs

and once for depositions of the Plaintiffs. (*Id.*). Bechtold seeks $1,149.53 for

milage, $128.00 for hotels, and $65.00 for meals arising from his travel between

Missoula and Wolf Point. (Doc. 19-1 at 7).

Defendants proffered an Offer of Judgement pursuant to Federal Rule of

Civil Procedure 68 to each of the Plaintiffs following discovery. (Doc. 19 at 2).

Defendants would pay Runs Through, McConnell, and Black Eagle $2,500 each.

Defendants would pay Jackson $3,500. Defendants' offer of Judgment included

terms to pay each Plaintiff's reasonable and necessary attorney's fees. (*Id.*).

Plaintiffs accepted the offer. (*Id.*).  The parties have been unable to agree upon

what constitutes reasonable and necessary attorney's fees for this case. (*Id.*).

## ANALYSIS

I.     **Defendants must pay Plaintiffs' "reasonable and necessary"
       attorney's fees pursuant to the Rule 68 Offers of Judgment.**

Defendants have agreed to pay Plaintiffs' "reasonable and necessary"

attorney's fees pursuant to the Rule 68 Offers of Judgment in this case. (Doc. 17-

1). The best starting point for determining what constitutes a "reasonable" fee is to

calculate "the number of hours reasonably expended on the litigation multiplied by

a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This

calculation produces the "lodestar" amount. *Pennsylvania v. Del. Valley Citizens'*
*Council for Clean Air*, 478 U.S. 546, 563 (1986). A strong presumption exists that
the "lodestar" amount constitutes reasonable attorney's fees. *Id.* at 565-66.

## II.   Plaintiffs' attorney's fees should not be reduced because four Plaintiffs were dismissed from the lawsuit.

Defendants contend that Plaintiffs should be awarded attorney's fees only
for half of the number of hours worked by Bechtold on Plaintiffs' case before
October 12, 2021. On this date, four of the eight original Plaintiffs had their claims
dismissed. Defendants argue that only half of the work Bechtold did up to that
point was for successful claims. (Doc. 23 at 2-3). Plaintiffs contend that their
attorney's fees award should not be reduced in the manner suggested by
Defendants because everything included in their fee request up until October 12,
2021, can be attributed to either all Plaintiffs or for just the Plaintiffs who were not
dismissed. (Doc. 26 at 2-3). The Court agrees with Plaintiffs that Bechtold's hours
dating up to October 12, 2021, should be not being billed at a half-rate as
Defendants suggest.

An award for attorney's fees should not be reduced because some of the
claims in the lawsuit were dismissed if the dismissed claims were related to the
non-dismissed claims. *Ibrahim v. United States Dep't of Homeland Sec.*, 912 F.3d
1147, 1174 (9th Cir. 2019). Claims are related if they "involve a common core of

facts." *Id.* In *Ibrahim v. United States Dep't of Homeland Sec.*, the Ninth Circuit determined that both the successful and unsuccessful claims in the petitioner's complaint were part of a "common course of conduct" in the context of awarding attorney's fees. *Id.* at 1175 (quoting *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003)). All of the petitioner's claims had arisen from being wrongfully placed on a no-fly list and other government watchlists. *Id.* at 1152, 1160, 1175. The specific harms that the petitioner suffered from being on these lists spanned from 2005 to when the Ninth Circuit heard the case in 2019. *Id.* at 1152-60.

All of the claims in this case, both successful and unsuccessful, have arisen out of two events that occurred on the same day where the same public official allegedly attacked two similarly situated groups of people with a baseball bat. (Doc. 1 at 3-4). The claims in this case relate even more closely than the claims in *Ibrahim*. The time frame of the claims in this case is only one day, while the time frame in *Ibrahim* is more than a decade.

### III.   Plaintiffs' attorney's fees should not be reduced because Bechtold had to travel from Missoula to Wolf Point twice.

Defendants argue that, in today's digital age, it is unreasonable for Bechtold, a Missoula attorney, to expect to collect fees for the nine hour travel time for a case in Wolf Point. (Doc. 23 at 6). Defendants further support this proposition by claiming that Plaintiffs could have found a competent attorney to handle their case

somewhere closer to Wolf Point than Missoula. (*Id.*). Plaintiffs argue that it is reasonable for Bechtold to collect fees for travel time in this case because, in all likelihood, Bechtold was the closest attorney to Wolf Point that would take Plaintiffs' case because there are very few attorneys in Montana that would take a civil rights case with a minimal dollar amount of damages on behalf of tribal members. (Doc. 26 at 5). The Court agrees with Plaintiffs that it is reasonable for Bechtold to collect attorney's fees in this case for travel time between Missoula and Wolf Point.

The party seeking an award of attorney's fees "must make a 'particularized showing' that the selection of counsel was based on experience and objective factors *and* that use of in-district counsel would produce a substantially inferior result." *CSL Silicones, Inc. v. Midsun Group Inc.*, 2017 WL 1399630, at 4 (D. Conn. Apr. 18, 2017). Plaintiffs most likely had no other choice but to hire Bechtold as counsel given the facts of their case and the remote location of where they live. Plaintiffs are all indigent and homeless tribal members who live on or near the Fort Peck Indian Reservation. (Doc. 26 at 5). The Fort Peck Indian Reservation is located in a remote part of Montana that is hundreds of miles away from any of the major population centers in the state. Very few attorneys practice in the near proximity of the city of Wolf Point and the Fort Peck Indian Reservation. This remoteness makes the odds that Plaintiffs would have been able

to find a local attorney willing to take on a civil rights case of relatively little monetary value on a contingent fee basis quite minimal. It is highly likely that Bechtold was the only Montana attorney who would have been willing to take this case.

Defendants also argue that Bechtold should not be allowed to collect some portion of his attorney's fees as he could have avoided his two trips to Wolf Point by meeting with Plaintiffs and attending depositions via video conference. (Doc. 23 at 6-7). The Court disagrees. "The presumption . . . should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's working time." *Henry v. Webermeier*, 728 F.2d 188, 194 (7th Cir. 1984). The United States District Court for the District of New Mexico has concluded that it was reasonable for an attorney to collect full attorney's fees for approximately four hours of travel each way to attend a deposition. *Ysai v. Brown*, 2015 WL 403930 at *21 (D. N.M. Jan. 7. 2015).

It was reasonable for Bechtold to travel to Wolf Point twice to meet with Plaintiffs and attend a deposition. Important benefits relate to meeting with clients and handling discovery in-person rather than via video. *See United States v. Moi*, 2021 WL 4048596 at *11-12 (D. Alaska June 7, 2021) (stating that there are inherent disadvantages to criminal defense counsel having to meet with clients and review discovery with clients virtually rather than in-person). It falls within the

7

scope of Bechtold's reasonable judgment as an attorney to decide that he needed to attend a client interview and discovery in-person in order to adequately represent his client.

**IV.    Plaintiffs' attorney's fees should be reduced to account for time spent by Bechtold performing clerical tasks.**

Plaintiffs contend that, because Bechtold's status as a sole practitioner entitles him to collect full attorney's fees for time that he spent doing clerical work that would typically be done by a legal assistant or secretary at a larger firm. (Doc. 26 at 5). Defendants argue that clerical time is not billable at all because it is part of the overhead. (Doc. 23 at 5). The Court agrees with Defendants that some of the tasks for which Bechtold billed qualify as clerical tasks and should not be recovered as part of the attorney's fees award.

"[C]lerical tasks such as filing, scheduling, and maintaining files, are usually part of the overhead charged in an attorney's hourly rate and are not recoverable." *Snell v. North Thurston School District*, 2015 WL 8621913 at *3 (W.D. Wash. Dec. 14, 2015). The Court finds that Bechtold's billing entries on 07/16/20, 10/09/20, 01/06/21, 10/17/21, and 11/05/21 all include tasks that constitute clerical work. (Doc. 19-1 at 6-7). The Court finds that the 06/10/21, 06/23/21, 07/20/21, and 07/28/21 entries cited by Defendants do not include clerical work because

communicating via email with opposing parties about depositions is something that an attorney can be expected to do. (*Id.*).

Bechtold's 10/09/20 and 10/17/21 entries consist entirely of clerical work. (*Id.*). Bechtold's 07/16/20, 01/06/21, and 11/05/21 entries list multiple tasks, some of which are clerical, without providing an explanation for how much time was spent on each task. This practice is known as block billing. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Courts have the authority to reduce the amount of attorney's fees recovered for hours that are block billed. *Id.* The Ninth Circuit held in *Welch v. Metro. Life Ins. Co.* that it was reasonable for a court to impose a twenty percent fee reduction for block billed hours. *Id.* The Ninth Circuit settled on the twenty percent figure because of estimates that block billing may increase the amount of billable hours that an attorney can work by approximately twenty percent. *Id.*

The situation here differs slightly because Bechtold's block billing makes it difficult for the Court to calculate how many hours were spent on clerical work on the dates previously listed. The twenty percent figure used in *Welch* still appears to be a relevant and reasonable number in the present case because the clerical work listed in the entries in question consists of filing, sending, and faxing. None of these activities presumably take up a significant amount of time, so reducing the block billed hours by twenty percent represents a just resolution to Bechtold's

inclusion of clerical work in the block billed entries. Accordingly, 0.36 of the 2020 hours billed and 0.5 of the 2021 hours billed are to be deducted from Bechtold's requested fee total of 86.7 hours.

**V.    Plaintiffs' attorney's fees should be reduced because of the modest amount involved and results obtained in this case.**

Plaintiffs request an hourly rate for attorney's fees of $370 for 2020, $390 for 2021, and $410 for 2022. (Doc. 19-1 at 6-8). The Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), listed twelve factors that a court should consider when determining a reasonable hourly rate for an award for attorney's fees. One of those factors is "[t]he amount involved and the results obtained." *Id.* at 718. The court should consider the amount of damages in the case when evaluating this factor, but should also consider the effect the case has on the law if damages are minimal. *Id.* The results obtained from the case represent a crucial factor in determining attorney's fees. *See Hensley*, 461 U.S. at 434. A court assessing the results obtained from a case should consider whether the prevailing party achieved "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* Level of success is the most critical factor when evaluating results obtained. *Id.* at 236. Courts should also "'consider the complexity of the litigation and the sophistication of the services rendered' when setting an attorney's rates." *Melissa G. v. Sch. Dist. Of Phila.*,

2008 WL 160613 at *3 (E.D. Pa. Jan. 14, 2008) (quoting *Wisdom v. Phila.*

*Housing Auth.*, 2003 WL 21545123 at *4 (E.D. Pa. July 7, 2003)).

Three Plaintiffs received $2,500 and one Plaintiff received $3,500 in the

Rule 68 Offer of Judgment that resolved this case. This rather minimal amount of

money awarded to Plaintiffs must be considered when determining the proper fee

rate for Bechtold in this case. It is also worth noting that, since this case settled and

did not have any broader legal implications beyond the affected Plaintiffs, this case

had relatively little effect on the law. This case was not a very complex case for

Bechtold to work on because of its straightforward fact pattern. Bechtold's

requested hourly rate of $370 for 2020, $390 for 2021, and $410 for 2022 proves

unreasonably high in light of the above-mentioned considerations, including

minimal monetary award.

An hourly rate of $320 for 2020, $340 for 2021, and $360 for 2022 is

reasonable in light of all of these circumstances. This deduction brings the

"lodestar" amount to $28,738.80 after deducting the hours spent on clerical work.

Defendants also owe Plaintiffs $2,405.71 for expenses related to Bechtold's work

on the case. (Doc. 19-1 at 7-8). This brings the total attorney's fees award to

Bechtold to $31,144.51.

Accordingly, **IT IS ORDERED** that Defendants pay Plaintiffs $31,144.51 for

attorney's fees.

DATED this 8th day of April, 2022.


_____
Brian Morris, Chief District Judge
United States District Court